UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. 6)**

I.    **Introduction**

On March 16, 2026, Rufino Ligario Hernandez ("Petitioner"), filed a petition for writ of habeas corpus. Dkt. 1 ("Petition"). On March 17, 2026, Petitioner filed a Motion for Temporary Restraining Order. Dkt. 6 ("Motion"). Through the Motion, Petitioner seeks release from immigration detention, or, in the alternative, a "constitutionally compliant" bond hearing within seven days. Dkt. 6 at 9.

Respondents filed their opposition to the Motion on March 19, 2026. Dkt. 9. Petitioner filed his reply in support of the Motion on March 20, 2026. Dkt. 10. Based on a review of the briefing, it has been determined that this matter can be decided without oral argument and is taken under submission pursuant to Local Rule 7-15.

For the reasons stated in this Order, the Motion is **GRANTED**.

II.    **Factual Background**

Petitioner is a 22-year-old citizen of Mexico. Dkt. 1 ¶ 1. Petitioner has resided in the United States since he was approximately six years old. *Id.* ¶ 1.

In the Petition, it is alleged that, in 2020, Petitioner's father was the victim of a "brutal assault" in Santa Maria, California. *Id.* at 25, 73. Petitioner's father then applied for a U-Visa.[1] *Id.* at 25. Petitioner applied for a derivative U-Visa pursuant to 8 U.S.C. § 1101(a)(15)(U)(ii)(II). *Id.* at 39–40. That statute provides that the "spouse and children" of victims of such an assault may also obtain lawful U-Visa status. 8 U.S.C. § 1101(a)(15)(U)(ii)(II).

According to a U.S. Department of Homeland Security Form I-862, Notice to Appear ("Form I-862"), on August 16, 2025, Petitioner was encountered by Immigration and Customs Enforcement ("ICE") agents, and was then charged as a person subject to removal from the United States. Dkt. 1 at 16. Thus,

---

[1] A U-Visa is a nonimmigrant visa that permits victims of serious enumerated crimes to obtain lawful status in the United States if they are likely to be helpful in the investigation or prosecution of a crime. 8 U.S.C. § 1101(a)(15)(U)(i).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

Petitioner was deemed an "alien present in the United States who has not been admitted or paroled," and who is removable under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* Petitioner was taken into custody that day by ICE. *Id.* ¶ 23. Petitioner was then placed in removal proceedings, with an initial hearing scheduled for September 11, 2025. *Id.* at 16.

On September 4, 2025, during Petitioner's detention, United States Citizenship and Immigration Services ("USCIS") made a determination, pursuant to 8 U.S.C. § 1184(p)(6), that Petitioner's application for a U-Visa was "bona fide." Dkt. 1 at 43. USCIS wrote: "At this time, the evidence demonstrates your petition for U nonimmigrant status is bona fide, and you warrant a favorable exercise of discretion to receive employment authorization and deferred action." *Id.* Petitioner's application for employment authorization was accepted the next day; that employment authorization is valid through September 4, 2029. *Id.* at 47. These actions did not formally result in the issuance of a U-Visa to Petitioner.[2]

While in immigration detention, Petitioner has received several bond hearings. Petitioner requested and was offered a bond hearing on September 4, 2025, but the bond hearing was not held after Petitioner's attorney withdrew the request without prejudice. Dkt. 9-1 at 3–4. On December 31, 2025, after a hearing, Petitioner was denied bond by an Immigration Judge ("IJ") based on a determination that he had "not met his burden with regards to danger." *Id.* at 6–7. At a third bond hearing held on February 13, 2026, Petitioner again was found to be a "[d]anger to the community" by another IJ. *Id.* at 9.

According to the Petition, Petitioner does not have any criminal convictions. Dkt. 1 ¶ 46. Rather, Petitioner is involved in a "pending DUI allegation" that has not yet resulted in a conviction, although Petitioner has not provided any information as to the status of these proceedings. *Id.* ¶ 44. Petitioner has enrolled in a 52-week substance abuse program. *Id.* ¶ 49. Petitioner also has a "reliable and verified sponsor" and significant family and communal ties in the United States." *Id.* ¶ 49. Finally, Petitioner has been gainfully employed at Reiter Berry Garms, Inc. in Santa Maria, California since

---

[2] Another district court provided a helpful summary of the U-Visa process:

> The number of U visas that [USCIS] may issue annually is statutorily capped, and that cap has been reached each year since 2009. Thus, USCIS places petitioners who qualify for a U visa but who cannot obtain one due to the statutory cap on a waiting list, where they receive interim benefits. For petitioners living in the United States, those interim benefits include deferred action, which protects them against removal from the United States, as well as employment authorization. However, due to backlogs, petitioners were waiting years to even be put on the waiting list. As a result, USCIS created a second track: a "bona fide determination." Those who receive a bona fide determination receive an abbreviated review, but USCIS does not conduct a full adjudication to determine if they qualify for a U visa until a visa becomes available within the statutory cap. In the interim, petitioners with bona fide determinations do receive deferred action and employment authorization.

*De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1268 (N.D. Cal. 2024). According to USCIS's Policy Manual, the bona fide determination and deferred-action status are valid for four years. 3 USCIS Policy Manual, Chapter 5 – Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last accessed Mar. 20, 2026).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

2024. Dkt. 1 at 25; *see also* Dkt. 1 at 61 (Petitioner's 1040 tax return for 2024). Respondents do not contest these factual averments.

Petitioner remains in custody at the Desert View Annex facility in Adelanto, California. Dkt. 9 at 6. He is not subject to a final order of removal. *Id.* Petitioner is now scheduled for a hearing in connection with removal proceedings on April 3, 2026. Dkt. 9-1 at 12.

**III.    Analysis**

      A.    Legal Standards

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Rule 65(b) sets forth the standards for the issuance of a TRO. Fed. R. Civ. P. 65(b). They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . 'merge.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Cottrell*, 632 F.3d at 1135. *Cottrell* determined that this "serious questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors—irreparable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

harm and the public interest—must be established. *See Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

> B.      Application

Petitioner contends that his continued detention violates the Due Process Clause of the Fifth Amendment for two reasons: (1) his bond hearings were constitutionally deficient; and (2) his continued detention is not reasonably related to removal. Dkt. 6 at 5–6; Dkt. 10 at 14–15; *see also* Dkt. 1 ¶¶ 43–77. He seeks a TRO that would require Respondents to release him from custody under an order of supervision, or in the alternative, to require that he be provided with a fourth, "constitutionally compliant" bond hearing before a different IJ. Dkt. 6 at 9.

As noted, Respondents have filed an opposition to the Motion, in which they contend that there is no subject matter jurisdiction over this action under 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii), 1252(b)(9) and 1252(g). Dkt. 9 at 9–13. Respondents also contend that Petitioner has failed to exhaust his administrative remedies. *Id.* at 13–14. Finally, Respondents argue that Petitioner has not raised a colorable due process violation, and that the remaining *Winter* factors weigh against granting relief. *Id.* at 15–16.

> 1.      Jurisdiction
>
> (a)      8 U.S.C. § 1226(e)

8 U.S.C. § 1226(e) provides that any "discretionary judgment regarding the application of [§ 1226]", which includes release on bond pursuant to subsection (a), "shall not be subject to review." 8 U.S.C. § 1226(e). Further, "[n]o court may set aside any action or decision" under § 1226 "regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* Based on this language, Respondents argue that there is no jurisdiction to review Petitioner's challenge to the denial of bond by the IJ. Dkt. 9 at 9–10.

Respondents' argument is not persuasive. "Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (plurality opinion); *accord Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017). Rather, § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion," but such discretionary decisions do not include constitutional claims or questions of law. *Id.* The Ninth Circuit has held that, under *Wilkinson v. Garland*, 601 U.S. 209 (2024), the issue of a noncitizen's "dangerousness" is a "reviewable mixed question" of law and fact. *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024) (review of the BIA's "dangerousness" determination is reviewable for abuse of discretion). Similarly, whether prolonged detention is lawful presents a question of law, and § 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (quoting *Singh*, 638 F.3d at 1202).

The essence of Petitioner's due process claim is that the IJ found Petitioner to be dangerous based on a constitutionally deficient process, and that his continued detention is unlawful because it is not reasonably related to removal. These contentions present at least mixed questions of law and fact,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

which are reviewable under *Martinez v. Clark*, notwithstanding § 1226(e). For that reason, other district courts have rejected Respondents' argument that § 1226(e) bars the exercise of jurisdiction in circumstances similar to this one. *See, e.g.*, *Kharis v. Sessions*, No. 18-CV-4800, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

For these reasons, § 1226(e) is not a jurisdictional bar to judicial review in this action.

> (b)      8 U.S.C. § 1252(a)(2)(B)(ii)

8 U.S.C. § 1252(a)(2)(B)(ii) provides that, "[n]otwithstanding any other provision of law (statutory or nonstatutory, including section 2241 of title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review" any "decision or action" which is, by statute, "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii). 8 U.S.C. § 1226(a)(2), in turn, provides that a noncitizen "*may*" be "release[d]" on bond during removal proceedings. 8 U.S.C. § 1226(a)(2)(A). Because the denial of Petitioner's request for bond was a decision "commit[ted] . . . to agency discretion by statute," Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes the exercise of jurisdiction in this action. Dkt. 9 at 10.

This argument is also unpersuasive. In general, whether or not a noncitizen should be released on bond pending removal is left to the discretion of the responsible agency. However, § 1252(a)(2)(B)(ii) does not bar review of *all* discretionary decisions. Rather it applies only those in which the discretionary authority of the Attorney General is "specified" in the statute in question. *See Spencer Enters., Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (the scope of the Attorney General's legal authority is "not a matter of discretion" to which § 1252(a)(2)(B)(ii) applies). Specifically, for subsection (ii) to apply, the statute must explicitly refer to the discretion of the Attorney General. *See Kucana v. Holder*, 558 U.S. 233, 247 (2010). To bar review, the statute must give the Attorney General "pure discretion, rather than discretion guided by legal standards." *Spencer Enters.*, 345 F.3d at 690.

Petitioner argues that his continued detention violates due process. Because Respondents do not have discretion to violate the Constitution, notwithstanding their discretion over bond determinations in general, § 1252(a)(2)(B)(ii) does not preclude jurisdiction in this action. *See Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537, 127 (2007). As with § 1226(e), Petitioner presents at least a mixed question of law and fact, rather than an attack on the factual determinations of the IJ within the realm of discretion afforded to Respondents. *See Tapia v. Gonzales*, 430 F.3d 997, 999 (9th Cir. 2005) ("While 8 U.S.C. § 1252(a)(2)(B) precludes a court's direct review of the Attorney General's discretionary decisions, the court may consider the predicate legal question of whether the IJ properly applied the law to the facts in determining an individual's eligibility to be considered for relief."). Other district courts have concluded that they maintain jurisdiction to review questions of law and mixed questions of law and fact notwithstanding § 1252(a)(2)(B)(ii). *See, e.g.*, *L.M. v. Noem*, No. 25-CV-2194, 2026 WL 103231, at *9 (D. Nev. Jan. 14, 2026); *A.R. v. Noem*, No. 25-CV-3565, 2026 WL 194850, at *4 (C.D. Cal. Jan. 26, 2026); *Baldizon v. Noem*, No. 26-CV-261, 2026 WL 246017, at *3 & n.1 (C.D. Cal. Jan. 26, 2026); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149, 1161 & n.5 (S.D. Cal. 2018).

For these reasons, § 1252(a)(2)(B)(ii) is not a jurisdictional bar to judicial review in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

(c)    8 U.S.C. § 1252(g)

8 U.S.C. § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Respondents contend that § 1252(g) precludes jurisdiction because Petitioner seeks to challenge a decision to "commence proceedings, adjudicate cases, or execute removal orders." Dkt. 9 at 10–11. Again, this argument is not persuasive.

The Supreme Court has explained that the jurisdictional limits imposed by § 1252(g) are "narrow," and apply only to the "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.' " *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (construing the jurisdictional bar of § 1252(g) as limited to "three discrete actions" and explaining that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"). The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294. Moreover, § 1252(g) only bars review as to discretionary decisions. *See Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."). That is because § 1252(g) is a "discretion-protecting provision," which is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.

Petitioner does not challenge any of the three specific discretionary actions stated in § 1252(g). Thus, he does not seek relief based on a challenge to the decision to "commence proceedings," to the "adjudicat[ion]" of his case, or the "execution" of any corresponding removal order. Instead, he challenges his prolonged detention prior to removal. § 1252(g) does not preclude a district court from reviewing a challenge to the allegedly unlawful detention of a noncitizen. Although such detention is closely linked to the Government's efforts to deport a person, a detention order "is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g)." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (quoting *Zadvydas v. Underdown*, 185 F.3d 279, 285 (5th Cir. 1999), *vacated and remanded by Zadvydas v. Davis*, 522 U.S. 678 (2001)). Other district courts have reached the same conclusion. *Carballo v. Semaia*, No. 25-CV-3176, 2025 WL 4631991, at *5 (C.D. Cal. Dec. 3, 2025) (collecting cases); *Rios v. U.S. DHS*, 808 F. Supp. 3d 1145, 1148–49 (S.D. Cal. 2025) (collecting cases).

For these reasons, § 1252(g) is not a jurisdictional bar to judicial review in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

(d)      8 U.S.C § 1252(b)(9)

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Respondents contend that § 1252(b)(9) precludes jurisdiction in this action because legal questions may only be reviewed by "the appropriate federal court of appeals in the form of a petition for review of a final removal order." Dkt. 9 at 12. This argument is also unpersuasive.

*Jennings* held that § 1252(b)(9) is not a bar to jurisdiction where a petitioner "[is] not asking for review of an order of removal; . . . challenging the decision to detain them in the first place or to seek removal; or . . . challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. The Ninth Circuit has also clarified that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).

Petitioner is neither seeking review of his removal order nor challenging any part of the process by which his removal will be determined. Rather, he is challenging his prolonged detention pending removal proceedings. If, as Respondents contend, § 1252(b)(9) applied to such claims -- requiring them to be brought only after a final order of removal has entered -- it would "make claims of prolonged detention effectively unreviewable." *Jennings*, 583 U.S. at 293 (rejecting Respondents' argument and characterizing it as "extreme"). "By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Id.* Instead, Petitioner's claim is "collateral to" removal proceedings, and therefore, reviewable. *J.E.F.M.*, 837 F.3d at 1032. Other district courts have concluded that § 1252(b)(9) does not bar jurisdiction under similar circumstances. *See, e.g.*, *Rios*, 808 F. Supp. 3d at 1148–49 (collecting cases); *Mora-Silva v. Noem*, No. 26-CV-32, 2026 WL 242442, at *3 (D. Nev. Jan. 29, 2026); *Esquivel Pacheco v. LaRose*, __ F. Supp. 3d __, No. 25-CV-2421, 2026 WL 242300, at *3 (S.D. Cal. Jan. 29, 2026).

For these reasons, § 1252(b)(9) is not a jurisdictional bar to judicial review in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

2.      Administrative Exhaustion

Respondents contend that Petitioner is not entitled to relief because he failed to exhaust his administrative remedies. Dkt. 9 at 13–14.

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh*, 638 F.3d at 1203 n.3. As a general matter, exhaustion requires a noncitizen to appeal an adverse bond determination to the Board of Immigration Appeals ("BIA") before "asking the federal district court to review the IJ's decision." *Leonardo*, 646 F.3d at 1160. "Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional" if properly raised by the government. *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *Suate-Orellana v. Garland*, 101 F.4th 624, 629 (9th Cir. 2024) (exhaustion is mandatory if raised properly by a party).

To determine whether prudential exhaustion is appropriate, courts consider the following factors adopted in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007): (1) whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision," (2) whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors weigh in favor of prudential exhaustion, exhaustion may be waived if the petitioner demonstrates one of the following factors, identified in *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004), applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Even if it were assumed that the *Puga* factors apply, as Respondents contend, Dkt. 9 at 13–14, Petitioner is excused from exhausting administrative remedies because several of the *Laing* factors apply.

*First*, contrary to Respondents' contention that Petitioner has merely challenged the IJ's "erroneous factual determinations and evidentiary errors," Dkt. 9 at 14, the basis for the Petition is a claimed deprivation of constitutional due process. Because this claim is not within the jurisdiction of the BIA, requiring administrative exhaustion would be futile. "An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)). For procedural due process claims, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." *Id.* at 1135 (quoting *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)). Petitioner's due process challenge is necessarily beyond the scope of the BIA's review because it "is well settled that [the BIA] lack[s] jurisdiction to rule on the constitutionality of the [Immigration and Nationality Act] and [its] regulations." *In re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Liu*, 55 F.3d at 426 ("[T]he BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws."); *see also Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if 'it is very likely what [the BIA's] result would have been.' Thus, '[w]here the agency's position "appears already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
|---|---|---|---|
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

set" and recourse to administrative remedies is "very likely" futile, exhaustion is not required.'" (citation omitted) (first quoting *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004); and then quoting *Szonyi v. Barr*, 942 F.3d 874, 891 (9th Cir. 2019))).

*Second*, requiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which alone provides a sufficient basis to waive exhaustion under *Laing*. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing). Respondents' argument to the contrary merely asserts, without citation to authority, that continued detention does not constitute irreparable harm. Dkt. 9 at 14.

For the foregoing reasons, prudential administrative exhaustion is excused as futile.

### 3. Likelihood of Success on the Merits

Turning to the merits of Petitioner's due process claim, Petitioner has shown that he is likely to succeed in demonstrating that his continued detention violates the Due Process Clause of the Fifth Amendment because it is not reasonably related to removal.[3]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Under *Mathews*, courts assess three factors in evaluating due process claims:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

*First*, Petitioner's individual liberty interest in freedom from detention "lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner's presence in the United States since he was six years old, and his resulting familial and community ties, adds substantial weight to his individual interests. *See id.* at 1033 ("During the more than two years since she entered the United States and was initially detained and released by ICE, Ms. Garro Pinchi has found a job and provided for her family. She has built community at work, at church, and at her boxing gym. She has undertaken treatment for multiple serious health conditions. These extensive relations of support and interdependence underscore the high stakes of her liberty.").

---

[3] Because Petitioner has shown that he is likely to succeed on the merits on this basis, Petitioner's argument that his bond hearing was constitutionally deficient is not addressed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

Petitioner's liberty interest has added importance because Respondents have granted him deferred-action status in connection with his U-Visa application. The Ninth Circuit has held that deferred action means that the Government will "take[] no action 'to proceed against an apparently deportable alien' based on a prescribed set of factors generally related to humanitarian grounds." *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) (quoting 6 Gordon, Mailman & Yale-Loehr, *Immigration Law and Procedure* §§ 72.03 [2][a] & [2][h] (1998)); *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 958 (9th Cir. 2017) (Kozinksi, J., dissenting) (explaining that while deferred action does not grant legal status, it is the Government's "commitment not to deport"). Similarly, the Supreme Court has stated that "[t]he defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision)." *Regents of the Univ. of Cal.*, 591 U.S. at 27. Applying these principles, district courts have consistently held that the detention of noncitizens subject to deferred action is unlawful. *See Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 914 (W.D. Wash. 2025) ("For the reasons above, the Court finds that Sepulveda Ayala's interpretation of deferred action—that the Government will refrain from executing his removal—finds strong support in Supreme Court precedent, circuit authority, and USCIS policy. In sum, Sepulveda Ayala has shown a likelihood of success on his habeas petition that his detention is unlawful."); *B.D.A.A. v. Bostock*, No. 25-CV-2062, 2025 WL 3484912, at *6 (D. Or. Dec. 4, 2025) (collecting cases). Indeed, because civil immigration detention may continue only for a "period reasonably necessary to secure removal," *Zadvydas*, 533 U.S. at 699, Petitioner has a substantial liberty interest in being out of custody because his deferred-action status makes removal not reasonably foreseeable.

*Second*, there is a substantial question whether Petitioner has been deprived of his liberty due to an error because it is not clear that his continued detention is lawful. Civil immigration detention must be "nonpunitive in purpose" and reasonably related to the statutorily authorized purposes of preventing flight and reducing the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. By making a BFD on Petitioner's U-Visa application, Respondents have already determined that Petitioner did not "pose[] a risk to national security or public safety" as of the date of that determination. *See* 3 USCIS Policy Manual, Chapter 5 – Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last accessed Mar. 20, 2026) ("During the BFD process, USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants the alien a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that alien deferred action for the period of the BFD EAD."). Moreover, because Petitioner has a pending, meritorious immigration benefit application -- which, as the BFD implies, he would have already received but for statutory visa caps -- his risk of flight is low.

At each of Petitioner's bond hearings, the IJ reached a contrary conclusion, finding that Petitioner posed a danger to the community. These findings were expressed in conclusory terms, without any weighing of the evidence or legal reasoning. Most importantly, both IJs failed to address Respondents' determination that Petitioner did not, as of September 4, 2025, pose a danger to the community, and instead, warranted a "favorable" exercise of discretion, deferred action, and employment authorization. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."); *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-421, 2026 WL 280478, at *4 (S.D. Cal. Feb. 3, 2026) ("By releasing Petitioner on bond in 2022, immigration officers determined that she was neither

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

a flight risk nor a danger to her community. Respondents have not alleged that there has been a change in circumstance since Petitioner's 2022 release, other than the dismissal of Petitioner's immigration proceedings in 2023. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk." (citations omitted)). In their briefing, Respondents do not even acknowledge that Petitioner was granted BFD- and deferred-action status -- which necessarily involved a finding that he was *not* a danger -- let alone argue that circumstances have changed since September 4, 2025 such that Petitioner is now a public-safety risk.[4]

*Third*, Respondents' interest in protecting the public from individuals who may pose a danger or flight risk does not outweigh Petitioner's liberty interests. The government has an "obvious interest" in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing . . . ultimate removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). Although Petitioner allegedly committed a DUI-related offense, Respondents have proffered no evidence that this offense resulted in a conviction, or that Petitioner otherwise poses a public-safety risk. Moreover, any argument that Petitioner endangers public safety based on conduct that occurred prior to September 4, 2025[5] would conflict with Respondents' own determination that Petitioner did not pose a risk of danger at that time, thereby making deferred action appropriate under the BFD process. *Cf. Organized Vill. of Kake v. USDA*, 795 F.3d 956, 968 (9th Cir. 2015) ("[A]n agency may not simply discard prior factual findings without a reasoned explanation.").

Respondents would be permitted, subject to due process limitations, to revoke their BFD determination and grant of deferred action to Petitioner. *See* 3 USCIS Policy Manual, Chapter 5 – Bona Fide Determination Process, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last accessed Mar. 20, 2026) ("USCIS reserves the right to revoke the BFD EAD and terminate the grant of deferred action at any time if it determines the BFD EAD or favorable exercise of discretion are no longer warranted, or the prior BFD EAD and deferred action were granted in error." (footnote omitted)). However, they may not do so without first providing Petitioner meaningful, pre-deprivation notice and an opportunity to be heard on why his status should not be revoked. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Meaningful, pre-deprivation process is required by the Fifth Amendment. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001) (pre-deprivation hearing before a neutral decisionmaker is "one of the most basic due process protections"), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (the Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property").

---

[4] Respondents claim, without any citation to the record, that the "IJ determined that the Government carried its burden of proof" as to dangerousness "by clear and convincing evidence." Dkt. 9 at 10, 15. There is no evidence that the IJ applied a "clear and convincing evidence" burden of proving dangerousness on Respondents. Indeed, at the first bond hearing, the IJ presumably did not do so because he found that "Respondent [i.e., Ligario Hernandez] ha[d] not met his burden with regards to danger." Dkt. 9-1 at 6. Moreover, an IJ is obligated to follow DHS regulations, which expressly impose the burden of proof on the noncitizen seeking bond. 8 C.F.R. § 236.1(c)(3).
[5] Because Petitioner has been detained since August 2025, any conduct relevant to the alleged DUI could not have occurred after September 4, 2025.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

Each of the *Mathews* factors weighs in favor of the requested relief. Therefore, Petitioner has shown that he is likely to succeed on the merits of his due process claim.

### 4.    Irreparable Harm

It is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical and psychiatric care in detention facilities, economic burdens on detainees and their families, harms to children whose parents are detained, and mental health problems resulting from detention. *Hernandez*, 872 F.3d at 995. In addition to the harm of unlawful, prolonged detention, Petitioner argues that his "continued incarceration has also caused significant emotional and psychological harm." Dkt. 6 at 7. These are harms that *Hernandez* recognized as "irreparable." *Hernandez*, 872 F.3d at 995.

Based on the foregoing, this factor supports the issuance of a TRO.

### 5.    Balance of Equities and the Public Interest

The balance of equities and public interest factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken*, 556 U.S. at 435). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government . . . cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (first quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022); and then quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). Additionally, in cases of removal, "there is a public interest in preventing aliens from being wrongfully removed." *Nken*, 556 U.S. at 436. In short, it is not "equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal.*, 757 F.3d at 1069 (quoting *Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013)).

Because Petitioner is likely to succeed on his due process claim in that his continued detention is contrary to law, this factor supports the issuance of a TRO.

*            *            *

Because a review of the *Winter* factors supports granting certain of the requested relief, it is unnecessary to conduct an analysis under *Cottrell.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

      6.     <u>Remedy</u>

Because Petitioner is likely to demonstrate that Respondents do not have a lawful basis to continue detaining Petitioner in light of his BFD and deferred-action status, and the other *Winter* factors support the issuance of relief, release is the appropriate remedy.

*Singh v. Chiang*, No. 25-CV-3024, 2025 WL 4058328 (C.D. Cal. Dec. 15, 2025), is instructive. There, a petitioner with BFD status due to a pending U-Visa sought release from custody on the ground that he could not be removed due to deferred action. *Id.* at *4. The district court agreed, holding that the petitioner's "continued detention violate[d]" due process based on the petitioner's deferred-action status, which prevented his removal. *Id.* Because the petitioner's detention was no longer tethered to removal proceedings, the government could not, consistent with the Constitution, detain petitioner as an exercise of its authority under the INA. *Id.*; *see also Hernandez*, 872 F.3d at 990 ("[D]ue process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint. . . . [A]ny detention incidental to removal must 'bear a reasonable relation to its purpose.'" (cleaned up) (quoting *Zadvydas*, 533 U.S. at 690)). Other district courts have reached the same conclusion. *Santiago v. Noem*, No. 25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (release granted for DACA deferred-action recipient); *Ayala v. Bondi*, No. 25-CV-1063, 2025 WL 2209708, at *5 (W.D. Wash. Aug. 4, 2025) (same for U-Visa deferred-action recipient); *Gama v. Bondi*, No. 25-CV-1925, 2025 WL 3559942, at *4 (W.D. Wash. Dec. 12, 2025) (same); *B.D.A.A. v. Bostock*, No. 25-CV-2062, 2025 WL 3484912, at *8 (D. Or. Dec. 4, 2025) (same).

As well as granting release from custody under these circumstances, other district courts have limited attempts at re-detention unless the government first provides notice of the reasons for detention and an opportunity for the person to be heard. *See Lopez v. Lyons*, No. 25-CV-3174, 2025 WL 3124116, at *5 (E.D. Cal. Nov. 7, 2025) (barring re-detention of BFD recipient unless the government provided pre-deprivation notice and a hearing, where the government would bear the burden of demonstrating that detention was appropriate by clear and convincing evidence); *Palencia v. Hermosillo*, No. 25-CV-2669, 2026 WL 125141, at *1, 8–10 (W.D. Wash. Jan. 16, 2026) (barring re-detention of U-Visa applicant until U-Visa application was fully adjudicated).

The same remedies are appropriate here. Because it has not been shown that Petitioner's continued detention is reasonably related to removal in light of his deferred-action status, due process warrants Petitioner's release. Moreover, although Respondents may revoke Petitioner's BFD and deferred-action status -- and ultimately may seek to redetain him in accordance with the requirements of the INA -- any attempts to do so must still comply with due process. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1092 (N.D. Cal. 2025) ("The government may detain petitioners only if, at such a bond hearing, the government bears its burden of demonstrating by clear and convincing evidence that [petitioners] are a danger to the community or a flights [sic] risk and that no conditions other than detention would be sufficient to prevent such harms.").

      C.     No Bond Is Necessary

Fed. R. Civ. P. 65(c) requires that, prior to granting injunctive relief, a movant pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-CV-00585-JAK (ADSx) | Date | March 24, 2026 |
| Title | Rufino Ligario Hernandez v. Mark Wayne Mullin, et al. | | |

have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).

No bond is required under the circumstances of this case. It has not been shown that Respondents will incur any significant cost due to the relief that has been ordered, and requiring a bond "would have a negative impact on [Petitioner's] constitutional rights, as well as the constitutional rights of other members of the public . . . ." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

## IV.  Conclusion

For the reasons stated in this Order, the Motion is **GRANTED**, as follows.

1.  Respondents, their agents, officers, employees, attorneys, and all persons acting in concert with Respondents are **ORDERED** to release Petitioner immediately from custody, subject to the prior terms and conditions of his BFD U-Visa determination, his deferred-action status, and his employment authorization.

2.  Respondents, their agents, officers, employees, attorneys, and all persons acting in concert with Respondents are **ENJOINED** from redetaining Petitioner unless they provide Petitioner with written notice and an opportunity to be heard at a pre-deprivation hearing to be convened by a neutral decisionmaker, and demonstrate by clear and convincing evidence at such hearing that petitioner is a flight risk or danger to the community, and that deferred-action-status is inapplicable, such that his detention is legally authorized.

On or before March 26, 2026, Respondents shall file a notice certifying compliance with the provisions of this Order and injunction.

Respondents are further ordered to show cause why a preliminary injunction should not issue with respect to the relief that has been requested by Petitioner. *See* C.D. Cal. L.R. 65-1. Respondents shall file any written response to the Order to Show Cause ("OSC") no later than March 31, 2026. Petitioner shall file any reply no later than April 2, 2026. If either or both parties elect to rely on the current briefing with respect to the OSC, they shall file a corresponding notice on or before the due date of their respective briefs. Based on a review of the briefing on the OSC, a determination will be made whether to schedule a hearing on whether a preliminary injunction should issue or to take the matter under submission.

**IT IS SO ORDERED.**

| | : |
|---|---|
| Initials of Preparer | LC3 |